[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 4, 2007
THOMAS K. KAHN
CLERK

_____

No. 04-16613

_____

BIA No. A96-114-075

MOHAMMED ZEESHAN ZAFAR,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent,

_____

No. 04-16689

_____

BIA No. A96-114-077

AMIRMOHAMMED HABIB LAKHANI,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent,

_____

No. 04-16750
_____

BIA No. A96-114-175

NIZAR GHULAMANI,

Petitioner,

versus

U.S. ATTORNEY GENERAL,                          Respondent.

_____

Petitions for Review of a Decision
of the Board of Immigration Appeals
_____

**(January 4, 2007)**

Before EDMONDSON, Chief Judge, TJOFLAT, ANDERSON, BIRCH, DUBINA, BLACK, CARNES, BARKETT, HULL, MARCUS, WILSON and PRYOR, Circuit Judges.

BY THE COURT:

The Court having been polled at the request of one of the members of the Court and a majority of the Circuit Judges who are in regular active service not having voted in favor of it (Rule 35, Federal Rules of Appellate Procedure; Eleventh Circuit Rule 35-5), rehearing en banc is DENIED.

/s/ J. L. Edmondson
_____
CHIEF JUDGE

2

HULL, Circuit Judge, concurring in the denial of rehearing en banc, in which ANDERSON, Circuit Judge, joins:

We concur in this Court's denial of rehearing en banc because at the time of their removal proceedings, petitioners were not statutorily eligible for adjustment of status and the panel opinion correctly upholds the Immigration Judges' ("IJs'") discretionary decisions to deny petitioners' continuance motions. The plain language of 8 U.S.C. § 1255(i) provides that aliens are not statutorily eligible for status adjustment by the Department of Homeland Security ("DHS") until they are "eligible to receive" immigrant visas. At the time of their removal proceedings, petitioners were ineligible to receive immigrant visas and in fact had not even filed applications for immigrant visas or for adjustment of status. Petitioners merely had applications for labor certificates pending with—not approved by—the Department of Labor ("DOL") at the time they sought continuances. We further concur in the denial of rehearing because the case has limited reach due to the April 30, 2001 deadline for the labor applications, and thus does not present "a question of exceptional importance" under Fed. R. App. P. 35(a)(2).

The essence of the dissent is this: because petitioners had applications for labor certificates pending with DOL, the IJs were required to continue petitioners' removal proceedings until DOL acted on those applications and until petitioners, if and when they were granted labor certificates by DOL, then had a chance to file I-

3

140 petitions for immigrant visas and I-485 adjustment-of-status applications. The dissent's rule would be that DHS cannot remove undisputedly removable aliens once they file labor certificate applications with DOL. However, the dissent's position finds no support in, and is indeed completely contrary to, § 1255.

It is undisputed that petitioners are removable because they overstayed their visas. Section 1255(c) bars aliens who were lawfully admitted into the United States, such as petitioners, from applying for adjustment of status to lawful permanent resident if the aliens overstay their visas. 8 U.S.C. § 1255(c).

Section 1255(i) creates an exception to § 1255(c)'s bar. Specifically, § 1255(i) states that "[n]otwithstanding the provisions of [§ 1255](a) and (c)," an alien "may apply to the Attorney General for . . . adjustment of . . . status" if: (1) the alien pays the applicable fees and the alien is physically present in the United States at the time the alien applies for adjustment of status; (2) the alien was physically present in the United States on December 21, 2000; and (3) the alien is the beneficiary of an application for a labor certificate that was filed on or before April 30, 2001. See 8 U.S.C. § 1255(i)(1)(A)-(C).

However, meeting these criteria only removes the § 1255(c) bar to filing an adjustment-of-status application. The mere filing of a labor certificate application with DOL does not make an alien eligible for adjustment of status under § 1255(i). Rather, there are two additional statutory eligibility requirements in § 1255(i) that

4

must also be met, as detailed in the panel opinion. First, the alien must be "eligible to receive an immigrant visa." 8 U.S.C. § 1255(i)(2)(A); see also Zafar v. U.S. Att'y Gen., 461 F.3d 1357, 1363 (11th Cir. 2006). Second, there must be "an immigrant visa . . . immediately available to the alien" at the time the adjustment-of-status application is filed. 8 U.S.C. § 1255(i)(2)(B); see also Zafar, 461 F.3d at 1363.

The panel opinion correctly concludes that at the time petitioners sought continuances, they were not "eligible to receive" employment-based immigrant visas, as required by § 1255(i)(2)(A). See Zafar, 461 F.3d at 1363. An I-140 application for an employment-based immigrant visa must be accompanied by an approved labor certificate and other required supporting documents. See 8 C.F.R. § 204.5(a)(2)-(3). In other words, an alien cannot apply for an employment-based immigrant visa until the alien has an approved labor certificate from DOL. See 8 U.S.C. §§ 1153(b)(3)(C), 1182(a)(5)(A); see also Zafar, 461 F.3d at 1363. Accordingly, at the time of their removal hearings, petitioners were not "eligible to receive" immigrant visas, as required by § 1255(i)(2)(A), because they did not have approved labor certificates. Their labor certificate applications were merely

5

pending with DOL.

Additionally, there was no evidence in the immigration court that there were "visa[s] . . . immediately available," as required by § 1255(i)(2)(B).[1] Zafar, 461 F.3d at 1363. Contrary to the dissent's claim that petitioners had "compli[ed] with" and "met the basic requirements" of § 1255(i) at the time they sought continuances, petitioners were in fact multiple steps removed from having met the requirements of § 1255(i). At the time of the continuance motions, there was merely a speculative possibility that at some point in the future petitioners might receive discretionary labor certificates from DOL, which would have only then entitled petitioners to apply to DHS for immigrant visas and adjustment of status under § 1255(i).

It is this critical point that distinguishes Zafar from Merchant v. U.S. Att'y Gen., 461 F.3d 1375 (11th Cir. 2006). In Merchant, the petitioner was "eligible to receive an immigrant visa," as required by § 1255(i). Indeed, Merchant had filed

---

[1]Notably, this second requirement—an immediately available visa—refers to a visa being immediately available at the time of the I-485 application for adjustment of status. See 8 U.S.C. § 1255(i)(2)(B). Again, petitioners had not filed applications for adjustment of status at the time they sought continuances before the IJs, and they certainly made no showing that visas would have been "immediately available" at some point in the future at which they would have filed their adjustment-of-status applications.

an I-140 petition for his immigrant visa and an I-485 status adjustment application with DHS at the time he sought a continuance. In contrast to the Zafar petitioners, Merchant had completed all actions with DHS required by § 1255(i) at the time of his motion before the IJ. The Zafar petitioners had not even begun the process before DHS, much less completed it. The distinction between Merchant and Zafar is a material difference that stems from the statutory language of § 1255(i).

The dissent's contention that the panel decision defeats the purpose and intent of § 1255(i) is also wrong. First, again, the plain language of § 1255(i) provides that aliens who have overstayed their visas are not statutorily eligible for adjustment of status until they are "eligible to receive an immigrant visa." 8 U.S.C. § 1255(i)(2)(A). Congress could have said in § 1255(i) that aliens become eligible for adjustment of status merely by applying for labor certificates with DOL, but that is not what Congress chose to do. The dissent's approach ignores the express language of the statute and attempts to read a vested right into § 1255(i) that is not found in the statute. There is nothing in § 1255(i) that even stays removal, much less grants any right to stop removal upon the mere filing of an application for a labor certificate with DOL.

7

Second, § 1255(i) contains no continuance provision of any kind, let alone a provision that grants a right to stop DHS removal when a petitioner has merely filed a labor certificate application with DOL. Third, § 1255(i) retains substantial purpose for those whom DHS asserts are the vast majority of § 1255(i) applicants: aliens who seek adjustment of status under § 1255(i) but are not in removal proceedings.[2]

An IJ has broad discretion to grant or deny a continuance. See Zafar, 461 F.3d at 1362. As explained in the panel opinion, the IJs here were all well aware that they had the discretion to grant petitioners' motions for continuances upon a

---

[2]The dissent incorrectly suggests that the panel decision runs contrary to the immigration authorities' internal implementation memorandum for § 1255(i). As a threshold matter, internal Immigration and Naturalization Service ("INS") memoranda do not have the force of law. See Zafar, 461 F.3d at 1365 (citing Pasquini v. Morris, 700 F.2d 658, 659 (11th Cir. 1983). In any event, the panel decision is wholly consistent with the INS memorandum. The memorandum states that "field offices shall not initiate removal proceedings against an alien who is eligible for adjustment of status under [§ 1255(i)], if such action is based solely on the filing of a[] . . . labor certification application . . . ." INS Memorandum of Apr. 27, 2001 (emphasis added). The dissent fails to acknowledge that: (1) the memorandum, by its own clear terms, applies only to those aliens "eligible" for adjustment under § 1255(i); and (2) the memorandum also states that "unauthorized aliens encountered in the course of routine enforcement actions, or who otherwise come to the attention of the [immigration authorities] other than by reason of the fact they are seeking to legalize their status under [§ 1255(i)], should continue to be processed according to established procedures, whether or not they are seeking to adjust their status under" § 1255(i). Id. (emphasis added); see also Zafar, 461 F.3d at 1365. Here, again, petitioners were not "eligible" for adjustment of status under § 1255(i). Additionally, there is no support in the record for the contention that petitioners were encountered in anything other than "routine enforcement actions."

showing of good cause. Zafar, 461 F.3d at 1366. Although the dissent argues otherwise, the IJs' stated reasons for denying petitioners' continuance motions are wholly consistent with the panel opinion. For instance, IJ Johnston denied Ghulamani's motion for continuance because "aliens who are awaiting the [DOL] to approve a labor certification are in a much weaker position than those [such as Merchant] who have an approved labor certification and are awaiting adjudication of an I-140." Id. Similarly, IJ Rast emphasized that a "labor certification ha[d] not yet been approved by the labor authorities." Id. Without approved labor certificates from DOL, petitioners were not yet even eligible for entirely discretionary § 1255(i) status adjustment by DHS, and accordingly, the IJs did not abuse their discretion in denying petitioners' continuance motions.

Finally, we reiterate that the § 1255(i) relief sought by petitioners is undisputedly available only to those aliens who filed labor certificate applications on or before April 30, 2001—nearly six years ago. Because of its limited reach, this case is not en banc-worthy.[3]

---

[3]The dissent relies heavily on Subhan v. Ashcroft, 383 F.3d 591 (7th Cir. 2004). We believe that the panel opinion correctly follows Khan v. Att'y Gen. of U.S., 448 F.3d 226 (3d Cir. 2006), and Ahmed v. Gonzales, 447 F.3d 433 (5th Cir. 2006), and persuasively distinguishes Subhan, for the reasons detailed in the panel opinion. See Zafar, 461 F.3d at 1366-67.

BARKETT, Circuit Judge, dissenting from the denial of rehearing en banc:

The panel in this case holds that an individual who has timely filed for labor certification may be deported simply because the government has delayed in adjudicating that application. En banc review is warranted because the panel's ruling is contrary to, and defeats the very purpose of, 8 U.S.C. § 1255(i).

In enacting § 1255(i), Congress created a specific path to lawful permanent residency for individuals who, like petitioners, are present in the United States but have overstayed their visas. As the President of the United States noted when he signed the legislation into law, § 1255(i) would "allow aliens (and their spouses and children) who apply for an adjustment of status or a labor certification to remain in the United States until such petition is approved." Statement by President of the United States, Pub. L. No. 106-554, 2000 U.S.C.C.A.N. 2705 (Dec. 21, 2000) (emphasis added).[1] However, the panel's ruling now allows the Department of Homeland Security (DHS) to thwart this law by removing from the country the very class of individuals for whom Congress enacted relief under

---

[1] The immigration authorities charged with enforcing the new law also recognized that it would not be appropriate to remove those individuals who are attempting to legalize their status through § 1255(i), and therefore specifically instructed regional directors not to initiate removal proceedings against those seeking to legalize their status through § 1255(i) "during the period of time the petition or application is pending . . . ." Memorandum from Michael A. Pearson, Executive Associate Commissioner, Office of Field Operations to Regional Directors (Apr. 27, 2001), 78 No. 19 Interpreter Releases 809, app. I at 2 (emphasis added).

§ 1255(i). This result is not based on any failure of petitioners to comply with the law, but solely because of delay for which <u>another</u> agency of the Executive, the Department of Labor (DOL), alone, is responsible.

To obtain relief under § 1255(i), an applicant has to (1) be present in the United States; (2) have applied for labor certification with the DOL by April 30, 2001; and, once approved, (3) file an application for permanent residency and an employer-sponsored visa petition with the DHS (which may be filed simultaneously). Petitioners met the basic requirements of § 1255(i) by virtue of being physically present in the United States and having timely sought labor certification. Indeed, they filed their applications for labor certification two years before any removal proceedings were initiated against them. There was nothing more they could do to advance their attempts to legalize their status until the DOL acted on those applications.

The IJs' refusal to continue the removal proceedings for no other reason than DOL's delay—which was entirely out of petitioners' control—was an abuse of discretion because it was not based on any reason consistent with the statute, and was instead contrary to the statute's very purpose. Notwithstanding petitioners' compliance with § 1255(i), the panel holds that it was not an abuse of discretion for the IJs to deny the continuances—resulting in an order of

11

removal—because petitioners were not "eligible" for relief under § 1255(i).

It is first worth noting that the panel's "eligibility" rationale for affirming the IJs is not the basis on which any of the IJs themselves denied the continuances. Rather, the stated bases for denying the continuances included one IJ's erroneous belief that he did not have the authority to grant such relief,[2] and another's unsupported conclusion that the approval of a labor certificate was too "speculative" to warrant a continuance.[3] On this basis alone, the cases should have been remanded to the IJs for a legally-sound and reasoned ruling on the motions for continuance.

In any event, "eligibility" for relief under § 1255(i)—as the panel has defined it—is predicated on the assumption that the DOL has acted. If, however,

---

[2]We have previously held that where the denial of a request for a continuance of deportation proceedings is premised on an erroneous conclusion, the denial of the motion for a continuance constitutes an abuse of discretion. Bull v. INS, 790 F.2d 869, 872 (11th Cir. 1986). The panel's characterization of the IJ's statements as not believing that any authority "required" him to grant the continuance is not supported by his choice of words.

[3]This rationale for denying a continuance—which the panel adopts as an "adequate reason"—has no basis in the record. Neither the IJ nor the panel cites anything in the record to suggest that petitioners' prospects for relief were in fact "speculative," in the sense of "based on conjecture"; rather, petitioners were simply in the middle of an ongoing process when ordered removed. That the procedure under § 1255(i) requires a labor certification before an applicant may file for legalization does not render the prospect for legalization "speculative"; it merely adds another step.

12

in the first stage of seeking legalization, the DOL unreasonably delays the adjudication of an otherwise meritorious application for labor certification (indeed, in the intervening time period, petitioner Lakhani's labor certification has been approved and petitioner Zafar's father's labor certification also has been approved), then how can a petitioner be faulted for not demonstrating his "eligibility" based on what is required of him at the second stage of the legalization process: a showing that he is eligible to receive an immigrant visa and that an immigrant visa is immediately available.  8 U.S.C. § 1255(i)(2)(A) and (B).  The panel imposes the impossible burden on petitioners to show that they have established "eligibility" on the basis of applications they are not yet able to file—even though, again, the inability to file is due solely to the government's failure to timely adjudicate the labor certifications.

The panel fails to discern the distinction between being ineligible for statutory relief and simply awaiting adjudication by a federal agency on an application in the first stage of the legalization process.  Indeed, the panel does not cite anything in the record that suggests that petitioners are in fact ineligible for adjustment of status under the statute.  Cf.  Onyeme v. INS, 146 F.3d 227 (4th Cir.

13

1998) (affirming denial of a continuance where petitioner had not yet filed application for adjustment of status under § 1255(a), because he was statutorily ineligible for relief based on prior fraudulent conduct in testifying falsely to an INS official); see also Oluyemi v. INS, 902 F.2d 1032, 1033-34 (1st Cir. 1990) (affirming denial of petitioner's motion for a continuance based on his application for an adjustment of status under § 1255(a) because petitioner was statutorily ineligible for adjustment of status based on repeatedly entering the country using false passports).

By denying their requests for a continuance for no other reason than DOL's delay in adjudicating their applications for labor certification, petitioners were ordered removed. Ironically, once they are removed from the country, petitioners do become ineligible for relief under § 1255(i), because they are no longer "present in the United States," as required by the statute. With this absurd result, the very purpose of the statute is defeated.

The panel attempts, unsuccessfully in my view, to distinguish the Seventh Circuit's opinion in Subhan v. Ashcroft, 383 F.3d 591 (7th Cir. 2004). In that case, as in this one, the IJ denied a continuance of removal proceedings solely on

14

the basis that the petitioner had not yet obtained approval of his application for labor certification. In reversing this denial, Judge Posner noted that denying the motion for a continuance on this ground (the pendency of an application for labor certification) "was not a reason for denying the motion for a . . . continuance, but merely a statement of the obvious: that the labor departments hadn't yet acted." Id. (emphasis added). Judge Posner further noted that if the IJ had found that Subhan "had dragged his feet or that it was obvious from the nature of his employment skills that he would not be granted the necessary certificates," or a number of other statutory reasons, "the denial of the . . . continuance would have been reasoned, and we may assume would have been consistent with [§ 1255(i)]." Id. at 593-94. But the IJ's reliance on the mere pendency of the labor certification application was not a "reason," and the Seventh Circuit therefore held that the IJ (and the BIA, which summarily affirmed the IJ's decision) "violated section 1255(i) when he denied Subhan a continuance without giving a reason consistent with the statute (indeed without giving any reason)." Id. at 595. The panel here misses the point: that the pendency of a labor certification application is not a reason for denying a continuance (but rather is a statement of fact) and a denial on

15

that basis <u>is not consistent with the statute</u>.  The distinction that the Seventh

Circuit made, and which this panel fails to discern, was between a petitioner who

is statutorily ineligible for adjustment of status under § 1255(i), and one who is

deemed ineligible by the IJ through no fault of his own, but rather because "the

wheels of bureaucracy grind slow."  <u>Id.</u> at 593.

When Congress has specifically enacted a path to legalization for those who

are in the United States but are otherwise removable, it must be an abuse of

discretion to refuse to continue removal proceedings solely on the basis that their

properly filed applications have not yet been adjudicated.[4]  Indeed, we have since

held that it is an abuse of discretion to deny a continuance of removal proceedings

to an alien with an approved labor certification who has filed for an employment

---

[4]The concurrence's statement that nothing in the statute "grants any right to stop removal upon the mere filing of an application for a labor certificate" turns the chronology of the cases before us on its head.  Petitioners' labor applications were filed, and had been pending, for <u>two years before removal proceedings were initiated against them</u>.  Petitioners complied with the requirement that they file their applications for labor certification on or before April 30, 2001.  It was not until March and April of 2003—<u>two years after their labor applications had been filed</u>—that DHS initiated removal proceedings, as petitioners continued to await government action on their timely-filed applications.  It is clear then, that Petitioners did not apply for labor certification to "stop removal"—rather, they attempted to access a path to legalization specifically crafted by Congress for individuals who, like them, were otherwise removable by virtue of having overstayed their visas.  Once placed in removal, Petitioners asked for nothing more than simply to allow that process to take its course.

16

visa and adjustment of status, solely because those applications have not yet been adjudicated. Merchant v. U.S. Att'y. Gen., 461 F.3d 1375 (11th Cir. 2006). When the then-INS initiated removal proceedings against Merchant, he, like petitioners, "only" had an application for labor certification pending. Id. at 1376. Fortunately for Merchant, during a nearly fifteen-month lag between the initiation of his removal proceedings and the IJ's final order, Merchant's application was approved. He, unlike petitioners, was therefore able to file a visa petition and a concurrent application for adjustment of status before the proceedings were concluded. Id. Petitioners here were only one step removed from the petitioner in Merchant. There is no reasoned basis to deny them the ability to complete the same process—whether in the end that results in their removal or adjustment of status—simply because of bureaucratic delay.[5]

The panel's ruling interferes with the ability of individuals to access a path to legalization specifically crafted by Congress, for no reason that is consistent with the statute or can fairly be attributed to the petitioners. As a result of the ruling, individuals who are pursuing the legalization process laid out in § 1255(i)

---

[5]This is not to say, as the Court observed in Merchant, that there may not be some other, reasonable basis on which to deny the continuance. 461 F.3d at 1380.

17

may now be removed from the country—and thereby become actually <u>in</u>eligible for the relief provided therein—simply because another agency in the Executive has not yet adjudicated the application that is the first step of that process. This directly contravenes the purpose of § 1255(i).

For these reasons, I believe the panel's ruling is in error on a question of exceptional importance, and therefore dissent from the denial of rehearing en banc.

18